IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HERITAGE DISPOSAL & STORAGE, L.L.C., a Nebraska limited liability company;<br><br>Plaintiff,<br><br>vs.<br><br>VSE CORPORATION, a Delaware corporation;<br><br>Defendant. | **8:15CV00076**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on Defendant VSE Corporation's motion to transfer venue from this court to the United States District Court for the Eastern District of Virginia, (Filing No. 16). For the reasons set forth below, the motion will be granted.

BACKGROUND

Plaintiff's complaint alleges a breach of contract action against Defendant VSE Corporation ("VSE"). (Filing No. 1). Plaintiff Heritage Disposal & Storage, L.L.C. ("Heritage") is a Nebraska limited liability company with its sole place of business in Alda, Nebraska. The members of Heritage are not citizens of the states of Delaware or Virginia. (Id. at CM/ECF p. 1, ¶ 1). VSE is a Delaware Corporation with its principal place of business in Alexandria, Virginia. (Id. at CM/ECF p. 1, ¶ 2).

VSE provides the federal government with support services, including the storage and handling of seized property. (Filing No. 17 at CM/ECF p. 2). In 2007, VSE worked with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to provide services for a seizure of roughly 900,000 pounds of illegal fireworks from a location in Covington Kentucky ("Covington Fireworks"). (Id.). In July of 2007, VSE entered into a

subcontracting agreement[1] with Heritage to store the Covington Fireworks in Heritage's facilities in Nebraska. (Filing No. 21 at CM/ECF p. 2).

In July of 2008, a year after this agreement and service began, VSE and Heritage entered into a Purchase Order specifying the terms and conditions of Covington Fireworks' storage. (Id.; Filing No. 18-2). The Purchase Order was entered into while VSE was maintaining the storage of Covington Fireworks under its prime contract with the U.S. Department of Treasury ("Treasury Prime Contract"). (Filing No. 21 at CM/ECF p. 3). The Purchase Order contained a Resolution of Disputes and Choice of Law Clause ("Resolution Clause"). (Filing No. 18-2,at CM/ECF pp. 8–12).

Subsection B of the Resolution Clause states:

> In the event of any dispute that arises solely between the Parties, . . . either party shall have the right to pursue resolution of the dispute in either the Circuit Court of Alexandria, Virginia, or in the United States District Court for the Eastern District of Virginia (Alexandria Division). The courts identified in the preceding sentence shall be the exclusive venue as between the Parties . . . .

(Id. at CM/ECF p. 9). The Purchase Order also contained a Survivability Clause which read, "In the event this Order is terminated, the Parties shall remain bound by the content of the following provisions, which shall survive termination: . . . Resolution of Disputes Choice of Law . . . ." (Id. at CM/ECF p. 11).

The court proceedings and resulting disposition of the Covington Fireworks were unexpectedly delayed. As a result, Heritage and the ATF became concerned about the conditions and safety of the fireworks.. (Filing No. 17 at CM/ECF p. 3-4). In May of 2009, following an inspection, ATF recommended certain changes to ensure safety during the Covington Fireworks' continuing storage. (Id. at CM/ECF p. 3). Thereafter, the Covington Fireworks required more space for storage and in July of 2009, Heritage sought to increase

---

[1] From a review of the record there is no evidence that the agreement was in writing until around a year after the storage began.

the monthly payments made by VSE. (Id.).  The change in the storage and subsequent price increase lead to a disagreement and, ultimately, this lawsuit.  (See Id.).

In September of 2010, the Treasury Prime Contract was terminated. (Filing No. 21 at CM/ECF p. 3). Thereafter, VSE and Heritage repeatedly attempted to negotiate a new contract to govern the terms and conditions of the Covington Firework's storage, but they have been unable to come to a mutual understanding and full resolution. (Id. at CM/ECF p. 5). In late 2010, VSE and Heritage attempted to renegotiate terms, but a conclusion was never reached in these negotiations. (Filing No. 21 at CM/ECF p. 5).

Parties entered into a Settlement Agreement in October of 2013.  (Filing No. 17 at CM/ECF p. 3).  This agreement was intended to end the parties' dispute regarding the price of storage.  (Id. at CM/ECF p. 3). Unfortunately, even after the Settlement Agreement was executed, the dispute continued. (Filing No. 25 at CM/ECF p. 3).  Heritage now claims it properly rescinded the Settlement Agreement and cannot be bound by its terms. (Filing No. 21 at CM/ECF p. 9). VSE argues the triggering event for Heritage's right to rescind the agreement never occurred and the Settlement Agreement is still in effect. (Filing No. 22 at CM/ECF p. 8).

The Settlement Agreement contains a forum-selection clause which states "This Agreement shall be subject to and governed by the laws of the Commonwealth of Virginia. Exclusive Jurisdiction for any disputes arising under this Agreement shall reside within courts of the Commonwealth of Virginia." (Filing No. 18-5 at CM/ECF p. 4).  In November of 2014 the parties entered into a Tolling Agreement to preserve certain claims and defenses arising from a dispute or the Settlement Agreement. (Filing No. 17 at CM/ECF p. 3; see also Filing No. 18-6 at CM/ECF p. 1). The Tolling Agreement has a forum-selection clause providing the agreement is subject to the laws of the Commonwealth of Virginia.  (Filing No. 18-6 at CM/ECF p. 2).

The complaint was filed by Heritage on February 27, 2015.   (Filing No. 1). Defendant moved to have the case transferred to the Eastern District of Virginia.  (Filing No. 16).  That motion is now before the court.

ANALYSIS

Defendant asserts "VSE and Heritage previously agreed that any disputes that they could not resolve between themselves would be litigated in Virginia courts. . . . [Therefore,] it is proper for the Court to give controlling weight to the parties' agreed-upon choice of forum and transfer this case to the Eastern District of Virginia." (Filing No. 17 at CM/ECF p. 9).  Plaintiff however, states its claims do not arise out of the Purchase Order and "the [Purchase Order's] forum selection clause cannot apply when all of the relevant facts and circumstances surrounding this lawsuit occurred after the [Purchase Order] was terminated." (Filing No. 21 at CM/ECF p. 9).

Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   28 U.S.C.A. § 1404(a).   A typical analysis under § 1404(a) requires the district court to balance a number of case-specific factors. Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 134 S.Ct. 568, 581 (2013).   When deciding motions to transfer a contract action, a valid forum-selection clause is a significant factor which figures centrally in the court's decision.   Id. at 579.   A district court should transfer the case to the forum identified in the clause and deny such transfers only under extraordinary circumstances unrelated to the convenience of the parties.  Id. at 576, 581.

Forum-selection clause.

Forum-selection clauses are presumptively valid. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  However, they do not generally survive a contract's expiration.

4

Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 206 (1991).   A forum-selection clause will survive a contract's termination in only limited circumstances:

> (1) where it involves facts and occurrences that arose before expiration; (2) where an action taken after expiration infringes a right that accrued or vested under the agreement; or (3) where, under normal principles of contract interpretation, the disputed contractual right survives the expiration of the remainder of the agreement.

Id.

When interpreting contracts, a court must, to the extent possible, give effect to every provision agreed to by the parties.   Nebraska Public Power Dist. v. MidAmerican Energy Co., 243 F.3d 1032, 1041 (8th Cir. 2000).   If the language of the contract is unambiguous, it must be given its plain and ordinary meaning as an average and reasonable person would understand it.   Id.

In this case, the Survivability Clause within the Purchase Order states that "In the event this Order is terminated, the Parties shall remain bound by the content of the [Resolution of Disputes Choice of Law], which shall survive termination[.]"   (Filing No. 18-2 at CM/ECF p. 11).   The wording of this clause is clear, and normal principles of contract interpretation require this court to give the clause its plain and ordinary meaning.   As such, the Resolution Clause survived the termination of the Purchase Order and the parties remain bound by its content. [2]

---

[2] Plaintiff relies on Webb Candy, Inc. v. Walmart Stores, Inc., No. 09cv2056, 2010 WL 2301461 (D. Minn. June 7, 2010) for its argument that the Survivability Clause applies only to transactions which occurred while the Purchase Order was in existence (if in fact the Purchase Order was terminated). Webb Candy is factually distinguishable.   The clause at issue in Webb Candy required the survival of contract terms "which by their nature are intended to survive termination."   Id. at *6.   Webb Candy questioned which provisions of the contract were "intended to survive," and concluded the survival clause failed because there was no clear language identifying which terms survived.   See Id. at **6–7.   Unlike Webb Candy, the survivability clause within the Heritage/VSE Purchase Order unambiguously states the parties to the Purchase Order remain bound to the Resolution Clause after the Purchase Order's termination.

Plaintiff argues "even if the [Purchase Order's] forum selection clause purports to survive the termination of the [Purchase Order[,]" the clause fails as it only applies with respect to transactions which occurred before the termination of the Purchase Order.  (Filing No. 21 at CM/ECF p. 9).  Plaintiff's argument acknowledges the first exception outlined in Litton, but it ignores the latter two exceptions.

Having concluded the Resolution Clause survives, the court must determine whether it applies to Plaintiff's lawsuit.  Plaintiff argues the claims alleged in its complaint do not arise from the Purchase Order, and therefore the Purchase Order's Resolution Clause cannot apply to this case.

The application of a broadly drafted forum-selection clause is not limited to actions arising from the contract terms.  See Terra Int'l, Inc. v. Miss. Chemical Corp., 119 F.3d 688, 694 (8th Cir. 1997) (affirming District Court's decision to transfer plaintiff's tort claim pursuant to forum selection clause in a contract which stated: "Any dispute or disputes arising between the parties hereunder[.]"); Knutson v. Raxair, Inc., 749 F. Supp. 214, 217 (D. Minn. 1990) (Finding transfer appropriate pursuant to the broadly drafted forum-selection clause read "[a]ny cause of action, claim, suit or demand by [plaintiff], allegedly arising from ... the relationship of the parties.").

The Resolution Clause within the Heritage/VSE Purchase Order is broadly worded to include "any dispute that arises solely between the Parties . . . ." (Filing No. 18-2 at CM/ECF p. 9). This wording does not limit the Clause's application to claims arising out of the Purchase Order.  Since Plaintiff's Complaint alleges a dispute arising "solely between the Parties," the Resolution Clause applies to Plaintiff's claims.

6

The Resolution Clause is a significant factor in the § 1404(a) venue analysis, and there are no extraordinary circumstances warranting a denial of transfer. Applying the Resolution Clause, this case will be transferred to the Eastern District of Virginia.

Forum non conveniens.

Even if the Resolution Clause was not applicable to Plaintiff's claims, transfer is warranted under the doctrine of forum non conveniens. 28 U.S.C § 1404(a) "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper." Van Dusen v. Barrack, 376 U.S. 612, 634 n.30 (1964). When considering a motion to transfer under forum non conveniens, the court must balance both the parties' private interests and the interests of the public. The private interests include:

> (1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, [and] (4) the location where the conduct complained of occurred . . . .

Terra Int'l, Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 696 (8th Cir. 1997). Public interests addressing § 1404(a)'s "interest of justice" factor include:

> (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs [of] . . . litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

See Id. (citations omitted). In addition to the general factors set forth in § 1404(a), the court conducts a "case-by-case evaluation of the particular circumstances at hand and considers all relevant factors." Id. at 691.

A.    Convenience of Parties and Witnesses

Defendant asserts the Eastern District of Virginia is a more convenient forum for the parties and witnesses.  In support of its assertion, Defendant states that, unlike the plaintiff, it "is a large company and . . . has numerous current and former employees who have knowledge of the facts relevant to this case."  (Filing No. 17 at CM/ECF p. 11).  Defendant further argues it cannot "compel its former employees [and federal employee witnesses] to travel to Nebraska for trial." (Id.).  Defendant lists 24 individuals who have been involved in or have information regarding the current dispute and may be called as witnesses at trial. (Id. at CM/ECF pp. 4–6).  Along with the names of each potential witness, the defendant lists the type and extent of each individual's involvement in the current conflict.  (Id.).  Of the 24 potential witnesses, 19 are either former employees or federal employees, most of whom are located in the state of Virginia. (Id.).

Plaintiff counters that many of its potential witnesses are located in Nebraska.  (Filing No. 21 at CM/ECF p. 7).  In support of this statement, Plaintiff lists 20 potential witnesses, most of whom reside in Nebraska or the surrounding states.  (Id. at CM/ECF pp. 7–8).  Plaintiff states each of its potential witnesses have "knowledge of Heritage's business dealings with VSE, Heritage's storage of the Covington Fireworks, and/or other facts relevant to this case."  (Id. at CM/ECF p. 7).  But unlike Defendant's evidence, Plaintiff has not explained the level of involvement or relevant information known by the potential witnesses.  And half of Heritage's potential witnesses are owners of Heritage.

Both parties have many potential witnesses.  But attending trial will significantly burden the Defendant's non-party witnesses.   Defendant has described, with some specificity, why these witnesses are important to Defendant's case, but 19 of these non-party witnesses are former employees and government agents.  As such, they may be unwilling to attend the trial voluntarily while being beyond the subpoena jurisdiction of a Nebraska court. In contrast, Plaintiff has not explained why its listed witnesses are needed at trial, and half of those listed are owners of the Plaintiff business.  These owner witnesses have a potential incentive to attend trial and testify, irrespective of whether they are beyond the court's

subpoena power. On balance, for the convenience of the parties and witnesses, venue would be more appropriate in the Eastern District of Virginia.

### B.  Location Where Conduct Occurred

Plaintiff argues the complained of conduct occurred within Nebraska because "most of the relevant acts identified in Heritage's Complaint (i.e., Heritage's storage and manipulation of the Covington Fireworks) occurred in Nebraska." (Filing No. 21 at CM/ECF p. 15).  Plaintiff claims it rarely sent representatives to Virginia.  Neither Defendant nor Plaintiff makes representations that Defendant sent representatives to negotiate in Nebraska.  Each party communicated contract negotiations from within their respective states.  This factor is neutral.

### C.  Interests of Justice

Defendant argues judicial economy weighs in its favor.  The defendant is currently involved in an administrative proceeding with the ATF seeking to receive compensation in a claim related to this case.  (Filing No. 17 at CM/ECF p. 11).  If the dispute is not resolved administratively, Defendant may file suit against the ATF in Virginia. (Id.).  The ATF may also be added as a party to the current litigation because it was obligated under the original contract to provide financial support to the defendant for the Covington Fireworks' storage. The ATF is located within the Washington D.C. area.

In addition, to decide this case, the court must determine whether the Settlement Agreement was properly rescinded by Heritage or remains in effect.  (Filing No. 14 at CM/ECF page 5, ¶ 34).  Under the terms of the Settlement Agreement, the law of the Commonwealth of Virginia governs the agreement and its interpretation.  While not a strong factor (since Nebraska is capable of researching and applying Virginia law), there is some benefit to having the forum court tasked with applying the law of its own state.

D.  Other Factors

Each party argues its records are located in their respective states.  However, neither party asserts the documents do not exist electronically or cannot be easily converted to a transferable electronic format.  This factor is neutral.

Upon consideration of the record, the court finds Defendant has met its burden of proving transfer to Virginia federal court is proper under 28 U.S.C. § 1404(a).  Transfer will enforce the Purchase Order's forum-selection clause, provide a more convenient forum for the parties and witnesses, and promote the interests of justice.

Accordingly,

IT IS ORDERED:

1)      Plaintiff's motion to file reply brief in opposition to Defendant's motion to transfer venue, (Filing No. 24), is granted. All briefings were taken into consideration.

2)      Defendant's motion to transfer venue, (Filing No. 16), is granted.

3)      This lawsuit is transferred to the United States District Court for the Eastern District of Virginia.

Dated this 5th day of October, 2015.

                                        BY THE COURT:

                                        s/ Cheryl R. Zwart
                                        United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.